### HENRY *v.* MANISTIQUE IRON CO.

1. TROVER AND CONVERSION — RIGHT OF ACTION — TITLE TO PROPERTY.

    Where plaintiff in trover claims no title to certain buildings on defendant's land, constituting a lumber camp, except as part consideration for performing a contract which he abandoned, it does not appear that defendant's possession of the buildings was unlawful, or that plaintiff had either the title to them or the right to their possession.

2. APPEAL AND ERROR—INSTRUCTIONS—PREJUDICIAL ERROR.

    Defendant in trover cannot complain of an instruction authorizing the jury to deduct from the amount of plaintiff's verdict the amount of an unmatured chattel mortgage given by plaintiff on the property to a person who was asserting no rights under it.

Error to Schoolcraft; Steere, J. Submitted January 11, 1907. (Docket No. 33.) Decided March 12, 1907.

Trover by John Henry against the Manistique Iron Company. There was judgment for plaintiff, and defendant brings error. Reversed.

*C. W. Dunton,* for appellant.

*R. R. Stewart,* for appellee.

OSTRANDER, J.   The action is trover for the conversion of certain buildings, wood, and camp equipage; the plea the general issue.   There was verdict and judgment for plaintiff, and defendant has proceeded by writ of error for a review.

The plaintiff and defendant sustained contract relations, evidenced by the following writing:

"SHINGLETON, MICH., 9–15–'04.

" Mr. JOHN HENRY,
            " Shingleton, Mich.

" *Dear Sir:*  You may take the five teams, wagon, sleighs, chains and tools as inventoried by L. O. Paquin last July.   If you will keep the teams in good order, wagons and c., in repair and use them for their keep until sleighing arrives.   Also you may have the loose lumber at Camp No. 69, and the camp buildings on section 3, town 45 N., range 18 W., owned by us and build camps on section 31, town 46 N., range 17 W.

"Provided you will draw and load all the cord wood on cars now located on section 1, town 45 N., range 18 W., and on section 31, town 46 N., range 17 W.

" In drawing this wood, you must pick up and load all scattering piles, and wood bottoms in a workmanlike manner, and commence loading as soon as there is snow enough for sleighing, loading the cars as directed, and properly care for the horses.

" If you do as above, we will pay you 85 cents per cord for drawing and loading the wood, and give you the camp buildings when the job is completed, paying you as above, on or about the 15th day of each month for wood delivered the previous month.   But in case you fail to load wood promptly as above, you are to at once deliver said above teams, wagons, sleighs and tools and the camp buildings erected on above described section 31, that we may at once go on with the work and complete the job during the winter of 1904 and 1905.

" Furnace measurements on wood must prevail, and all above conditions complied with.

"Yours truly,
            " MANISTIQUE IRON COMPANY,
            " By R. R. JENNEY, Superintendent.

" I accept the above proposition, and will comply as above.

" JOHN HENRY."

The camp buildings were built in part from lumber and logs belonging to defendant, were occupied by plaintiff, and the loading of the wood contemplated was proceeded with; but it was not all of it removed during the season of 1904–05.   Plaintiff, in the spring of 1905, "abandoned the contract," as he himself testifies.   He left his camp equipage stored in the buildings he had erected.   The conversion attempted to be ·made out is that defendant took possession about December 20, 1905, of the buildings for the purpose of removing the remainder of the wood, and, also, after giving plaintiff notice to remove his equipage, used it or some of it in the camp.   While the property—dishes, stove, blankets, etc. — were so being used, and after being notified by defendant to remove them, plaintiff went to the camp, and, unhindered, made an inventory of his property.   The reason given by plaintiff for not removing the property is that he wanted it left in the camps where it was; that he wanted it there later on, and did not feel like moving it.   He had kept a man to watch the camp during the summer of 1905, until danger from forest fires had passed.   The camp buildings were on defendant's land.   As plaintiff, under the contract, could get title to them only by completing the job, and as it does not appear that he had or claimed title in any other right, and as the job, whether or not it might have been completed by plaintiff in the winter of 1905, was abandoned, it is difficult to understand how defendant's possession of the buildings was unlawful, or how plaintiff had either title to them or the right to their possession.   Upon the evidence, the jury should have been instructed that plaintiff could not recover the value of the buildings.   As to the wood, the court charged the jury that plaintiff had no title thereto, and could not recover the value thereof.

It appeared that plaintiff had mortgaged the camp buildings and camp equipage and other personal property to some third person to secure payment of a sum stated to be "something like $1,000 or $1,500;" the mortgage,

not produced in evidence, being outstanding at the time of suit. The court said to the jury that in such case plaintiff could recover judgment for the value of the property less the mortgage upon it. By some process of reasoning, the jury made a deduction on account of the mortgage of $300, and gave a verdict for $758, and this is the amount of the judgment. While the court announced an incorrect rule of law, appellant has no reason for complaining of the action of the court or the jury. The mortgage was not due. The mortgagee was asserting no rights under it. Plaintiff was asserting that defendant was, as to all the property, a stranger and trespasser. *Parkhurst* v. *Jacobs*, 17 Mich. 302.

There was evidence tending to show conversion by defendant of at least some of the camp equipment.

Because the court left to the jury the question of plaintiff's ownership of the buildings, the judgment is reversed, and a new trial granted.

McALVAY, C. J., and GRANT, BLAIR, and MONTGOMERY, JJ., concurred.